UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

PLAYSTUDIOS US, LLC,

               PETITIONER,

v.

BROOKE KINGSTON,

               RESPONDENT.

CASE NO. __5:25-cv-25-BJB____

*ELECTRONICALLY FILED*

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner, Playstudios US, LLC ("Playstudios"), by and through undersigned counsel, submits this Petition to confirm a final arbitration award issued in JAMS Ref. No. 5425001120, against Respondent, Brooke Kingston. Playstudios hereby alleges as follows:

### PARTIES

1.     Playstudios is a Delaware limited liability company that is authorized to, and does, conduct business in Clark County, Nevada. None of Playstudios' members are residents of the Commonwealth for purposes of diversity.

2.     Upon information and belief, Kingston resides in Benton, Kentucky.

### JURISDICTION AND VENUE

3.     This dispute arises from agreements governed by and construed under Nevada law. The parties arbitrated the dispute according to their agreement to arbitrate under Playstudios' Terms of Service. *See* Playstudios' Terms of Service and Kingston's Statement of Claim ("Demand"). A true and correct copy of Playstudios' Terms of Service is attached as **Exhibit A**; a true and correct copy of Kingston's Demand is attached as **Exhibit B**.

4.     The parties proceeded with arbitration and an arbitration award was issued in Las

1

Vegas, Nevada, on March 11, 2024. *See* Order on Pending Motions and Award, a true and correct copy is attached as **Exhibit C**.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity amongst the parties.

6.      Additionally, the amount in controversy exceeds $75,000. The Sixth Circuit Court of Appeals has held that Courts "measure the amount in controversy by 'the value of the object of the litigation.'" *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed 2d 383 (1977)). Kingston judicially admitted that she sought declaratory relief in arbitration to void the agreement between herself and Playstudios. Kingston chose this course of action to allow her to file a putative class action in Kentucky seeking recovery of monies lost gambling under KRS 372.020 and 372.040. Accordingly, the object of litigation was a putative class action on behalf of all Kentucky residents, seeking far more than $75,000—thus the amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied.

7.      Venue is proper in this Court under 9 U.S.C. §§ 204 and 302 because those statutes provide that a party may file a petition for judicial confirmation in any court the controversy between the parties could be brought. Venue is, further, proper in this Court under 28 U.S.C. § 1391(b) because Kingston resides in the Court's judicial district.

## **GENERAL ALLEGATIONS**

8.      Kingston filed her Demand and initiated arbitration against Playstudios under Playstudios' Terms of Service on April 20, 2023. *See* **Exhibit B**.

9.      Playstudios operates Pop! Slots—a free-to-play mobile game application accessible worldwide on most mobile devices with cellular or an internet connection.

10.     Kingston's Demand alleged that Playstudios' application resembled a computerized slot machine and allowed users to play with virtual currency that offered users "a taste of gambling." *See* **Exhibit B**, at ¶¶ 3-4.

11.     When users log into Playstudios' application for the first time, they receive free virtual currency. Users can, then, bet the free virtual currency for a chance to earn more virtual currency and continue playing.

12.     Kingston alleged that when users run out of free virtual currency, users can exit the game and return later when the game provides them with more virtual currency for free, or they can buy virtual currency. *See* **Exhibit B**, at ¶¶ 4-6.

13.     The virtual currency cannot be converted to real money, it is solely for the user's "private, non-commercial entertainment purposes and for no other purpose whatsoever." *See* **Exhibit A**, at 5. Users do not own the virtual currency in Playstudios' applications and the virtual currency does "not refer to any credit balance of real points or its equivalent." *Id.* at 6. Users cannot transfer, trade, or sell the virtual currency. *Id.* at 6.

14.     Kingston alleged that she spent money buying virtual currency to continue playing in Playstudios' applications.

15.     Kingston alleged that the act of buying virtual currency meant that she lost money gambling on Playstudios' applications as defined by Kentucky law.

16.     Kingston alleged that the act of buying virtual currency amounted to gambling on Playstudios' applications under Kentucky law.

17.     Kingston acknowledged and conceded that users must execute an agreement before logging into Playstudios' applications. *See* **Exhibit B**, at ¶ 17.

18.     Under the explicit terms of the agreement, the parties agreed that the Terms of

Service "and any action related thereto will be governed by the laws of the State of Nevada without regard to its conflict of laws provisions. *See* **Exhibit A**, at 23.

19.     Despite the choice of law provision that Kingston consented to, Kingston's Demand sought limited relief to permit interpretation of the Terms of Service under Kentucky law. Kingston sought declaratory relief stating (1) that the virtual currency "something of value" under KRS 372.010, (2) that Playstudios' applications constituted gambling under Kentucky law, and (3) that the Terms of Service are void under Kentucky law. *See* **Exhibit B**, at ¶ 22.

20.     On February 12, 2024, the arbitrator heard oral argument from the parties.

21.     On March 11, 2024, the arbitrator issued an Order on Pending Motions and Award dated February 22, 2024 ("Award"), a true and correct copy of which is attached as **Exhibit C**. The Award granted Playstudios' motion for summary disposition and denied Kingston's motion. The arbitrator agreed that Playstudios' Terms of Service's choice of law provision was enforceable. Nevada law, therefore, governed the construction and validity of Playstudios' Terms of Service, and an interpretation of Playstudios' Terms of Service, and an interpretation of the Terms of Service under Kentucky law was thus moot.

22.     Because the arbitrator's finding disposed of all of Kingston's declaratory relief claims, the Award was styled as a final award.

23.     The Award has not been vacated, modified, or corrected under JAMS Comprehensive Arbitration Rules, nor under 9 U.S.C. § 10 or § 11.

24.     Pursuant to 9 U.S.C. § 9, Playstudios is bringing this action within one (1) year after the Award was made.

25.     Pursuant to JAMS Comprehensive Arbitration Rules, Rule 25, Kingston consented that judgment upon the Award may be entered by this Court.

4

## PRAYER FOR RELIEF

WHEREFORE, Playstudios respectfully requests that this Court enter an order confirming the Award pursuant to 9 U.S.C. § 9, enter final judgment thereon pursuant to 9 U.S.C. § 13, and award Playstudios for such other and further relief this Court deems just and proper.


Date: February 21, 2025                     Respectfully submitted,

                                            GORDON REES SCULLY MANSUKHANI
                                            LLP


                                            */s/ Denise M. Motta*
                                            Denise M. Motta
                                            Gordon Rees Scully Mansukhani LLP
                                            325 W. Main Street, Suite 2300
                                            Louisville, KY 40202
                                            Telephone: (502) 371-1253
                                            E-mail: dmotta@grsm.com
                                            *Counsel for Defendant, Playstudios US, LLC*